# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-50567
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

March 10, 2016

Lyle W. Cayce
Clerk

MARTIN A. HARRY,

   Plaintiff - Appellant

v.

CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL
SECURITY,

   Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas

Before JOLLY, DENNIS, and PRADO, Circuit Judges.

PER CURIAM:

Martin A. Harry, an attorney, appeals the district court's judgment denying his Fifth Amendment due process claims ("takings claims") against the Social Security Administration ("SSA"). Before the district court, Harry alleged two separate takings of his property by the SSA without due process of law. First, Harry alleged a taking by the SSA through its request that he return overpaid attorney's fees. Next, Harry alleged a taking by the SSA of his livelihood by disqualifying him from representing clients before the SSA. The district court held that Harry was given adequate opportunities to contest the SSA's alleged takings, both at a hearing before an Administrative Law Judge

("ALJ") and an appeal of the ALJ's decision to the Appeals Council ("AC"). Finding no error, we AFFIRM.

## I.

Martin A. Harry is licensed in the State of Texas and has represented social security claimants for over 17 years. Harry entered into fee arrangements to represent three clients, "B.F.", "A.B.", and "J.B.". Each arrangement satisfied the pertinent requirements of the Social Security Act. Harry won favorable decisions for all three clients before the SSA for which he was compensated by the SSA. After the SSA remitted payment, it discovered that through its own fault or omission each of Harry's clients had been overpaid.[1] Based on its overpayment, the SSA also determined that it had overpaid Harry. The SSA issued separate letters to Harry requesting reimbursement of the overages corresponding to each of the clients' cases; and, each letter ended with the same warning:

> Failure to comply in a timely manner will require us to refer the matter to the Office of General Counsel's Representative Conduct and Civil Rights Division for consideration of a potential fee collecting violation under 20 C.F.R. 404.1740(c), which may warrant proceedings of suspension or disqualification under 20 C.F.R. 404.1745.

After years of attempting to collect the alleged overpayments to Harry, the SSA followed through on its warnings, and referred the three cases to the SSA's Office of General Counsel ("OGC"). The OGC, in turn, sent Harry separate letters that corresponded to each of the clients' cases, the gist of which allowed Harry four options: 1) return the excess payment; 2) provide the SSA with evidence of a prior repayment of the excess payment; 3) provide documentation that the SSA's records were incorrect; or 4) remain in violation

---

[1] Although each client's case provided a unique circumstance for the SSA's miscalculation and overpayment of benefits, those details are not relevant to this appeal.

of SSA regulations and face administrative sanctions—including disqualification from representing clients before the SSA. When Harry did not remit payment, the OGC instituted sanctions proceedings against Harry.

At a sanctions hearing, the ALJ determined that the SSA had proved that Harry "was in violation of the fee retention provisions of the regulations," and that "disqualification" was the "only available sanction for each count." Therefore, "pursuant to 20 CFR 404.1745(b), 404.1770(a)(3)(iii), 416.1545(b), and 416.1570(a)(3)(iii)," Harry was "DISQUALIFIED from acting as a representative of claimants in dealing with the Social Security Administration." Harry appealed, and the Appeals Council affirmed the ALJ's decision to disqualify him from representing clients before the SSA.

Harry then appealed the AC's decision to the district court. Recognizing the exclusive jurisdiction of the SSA to review administrative actions regarding both claimant-representative fees and disciplinary hearings, the district court reviewed only Harry's constitutional due process claims. The district court held that because Harry had received "adequate due process throughout [his] disputes regarding fees for representing J.B., B.F., and A.B., [as well as] his sanctions hearing and appeal", his due process rights were constitutionally satisfied. Harry appealed to this Court.

## II.

We review a district court's "bench trial conclusions of law de novo, and findings of fact for clear error." *Williams v. Kaufman Cty.*, 352 F.3d 994, 1001 (5th Cir. 2003). Furthermore, because the Social Security Act precludes judicial review of administrative actions regarding: 1) claimant-representative fees, *see* 42 U.S.C. §§ 405(g) and (h); and, 2) whether an attorney may represent clients before the SSA, *see* 42 U.S.C. § 406, we, like the district court, will review only Harry's due process claims.

III.

As earlier noted, Harry contends that the SSA violated his due process rights by taking his property interest in his attorney's fees and livelihood without providing him an adequate hearing for either. Each of these claims will be addressed in turn.

First, Harry asserts that because the SSA did not provide an adequate hearing before requesting the return of the fees, his due process rights were violated *at the time* the SSA requested that he remit payment. Thus, Harry contends that the opportunity to contest the amount of those fees at a later time before the OGC was defective because: 1) the OGC lacked any authority to recalculate the fees; and 2) the hearing provided by the OGC would occur after the SSA had reached its final determination of those fees.

The record is clear, however, that Harry did not respond to the SSA's requests that he return the overpayment. The SSA's request that he return the overpaid attorney's fees certainly did not rise to a deprivation of that interest or a violation of Harry's due process rights. The SSA's only action against Harry, or his alleged property interest in the unreturned attorneys' fees at the time, was that the SSA might turn Harry's case over to the OGC for further proceedings. There was certainly no formal order, nor was there any lien created on Harry's property because he failed to remit his fee. In fact, Harry went years without acknowledging, much less satisfying, the SSA's requests for repayment. Therefore, the SSA did not violate Harry's due process rights by failing to provide an adequate hearing at the time of the request for the overpaid attorney's fees.

Next, Harry asserts that because the SSA disqualified him from representing clients before the SSA, it deprived him of his livelihood without providing him an adequate hearing.

We have recognized that a plaintiff has a property interest in qualifications that are "essential in the pursuit of a livelihood." *Bell v. Burson*, 402 U.S. 535, 539 (1971). We have not, however, recognized a property interest in the specific qualification that Harry alleges in this case—the right to represent clients before the SSA. Nevertheless, we will assume that Harry has a viable property interest in the right that he alleges.

No one disputes, however, that the SSA "may, after due notice and opportunity for hearing, suspend or prohibit from further practice before the [SSA] any such person, agent, or attorney who refuses to comply with the [SSA]'s rules and regulations or who violates any provision of this section for which a penalty is prescribed." 42 U.S.C. § 406. Furthermore, when the SSA turns a case over to the OGC, and the OGC seeks to disqualify an attorney from representing clients before the SSA, the attorney is entitled to a hearing before an ALJ on the merits of the disqualification. *See* 20 C.F.R. §§ 404.1765 and 416.1550. The attorney is also afforded an appeal to the AC, which reviews the ALJ's determinations. *See* 20 C.F.R. §§ 404.1775 and 416.1575. Additionally, and most importantly, the attorney "may continue to represent claimants until a final decision [by the AC] is issued." *HALLEX I-1-1-55*, 2013 WL 1280291, at *1 (March 29, 2013).

Moreover, neither party contests that the adequacy of the SSA's hearings is governed by balancing the factors outlined in the Supreme Court's decision in *Mathews v. Eldridge*, which include: "(1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards; and (3) the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail." *Mathews v. Eldridge*, 424 U.S. 319, 321 (1976).

Only assuming that Harry had a protectable interest in representing clients before the SSA, this interest would certainly be "affected by the official action" if he was disqualified to do so by the SSA. The first *Mathews* factor, thus, favors Harry. Considering the extent of the judicial procedures that the SSA invokes when reviewing whether an attorney should be disqualified, however, the other two *Mathews* factors cut in the SSA's favor. Specifically, Harry was afforded a hearing before an ALJ on the merits of his disqualification; furthermore, the right to appeal before the AC was also provided. Furthermore, the disqualification proceedings occurred *before* the alleged "taking". In short, the due process provided by the SSA was adequate.[2]

## IV.

For these reasons, the judgment of the district court is

AFFIRMED.

---

[2] For the first time on appeal, Harry raises an additional due process claim. Harry contends that because "[d]eprivation of authorization of fees . . . rendered the retention of those fees unlawful", Harry was exposed to "civil fines, criminal punishment, [] administrative sanctions . . . [and] claims by his clients to those fees he retained because the alleged excess fees had been paid by clients through the SSA from their past-due benefits." But, we "will not allow a party to raise an issue for the first time on appeal merely because a party believes that he might prevail if given the opportunity to try a case again on a different theory." *Leverette v. Louisville Ladder Co.*, 183 F.3d 339, 342 (5th Cir. 1999) (citations omitted).